UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KELLEAN K. TRUESDELL, individually
and on behalf of others similarly situated,

Plaintiffs,

-vs-                                               Case No.  5:13-cv-552-Oc-10PRL

CLAYTON THOMAS, individually, CHRIS
BLAIR, individually and in his official
capacity as Marion County Sheriff, JULIE
L. JONES, in her official capacity as the
Executive Director of the Department of
Highway Safety and Motor Vehicles,
GERALD M. BAILEY, in his official
capacity as Commissioner of the Florida
Department of Law Enforcement,

Defendants.
_____/

## O R D E R

Plaintiff Kellean K. Truesdell has filed a putative class action Complaint against

the Defendants alleging violations of the Driver's Privacy Protection Act of 1994, 18

U.S.C. §§ 2721, *et seq.* ("DPPA"), violations of her federal privacy rights pursuant to

42 U.S.C. § 1983, and a state law claim for negligent supervision (Doc. 1).  The case

is presently before the Court on Defendants Marion County Sheriff Chris Blair's and

Clayton Thomas' motions to dismiss (Docs. 13, 18), to which Ms. Truesdell has filed

a timely consolidated response in opposition (Doc. 25).[1]  The Defendants both argue

_____

[1]On September 2, 2014, Ms. Truesdell filed a Notice of Voluntary Dismissal of Defendants
(continued...)

that the application of the DPPA to the specific facts of this case is an unconstitutional violation of the Commerce Clause and the Tenth Amendment, and Sheriff Blair further argues that Ms. Truesdell has not sufficiently pleaded a claim for relief against him. Although the Defendants have requested oral argument (Docs. 14, 19), the Court finds that a hearing is not necessary and that the motions are ripe and can be resolved on the pleadings.

Upon due consideration, and for the reasons discussed below, the Court finds that both motions to dismiss are due to be denied in their entirety.

## Background Facts

### I.   The Driver's Privacy Protection Act

In 1994, Congress enacted the Driver's Privacy Protection Act, regulating the disclosure and use of certain personal information contained in state motor vehicle records.  As recently noted by the Supreme Court:

> The enactment of the DPPA responded to at least two concerns over the personal information contained in state motor vehicle records.  The first was a growing threat from stalkers and criminals who could acquire personal information from state DMVs.  The second concern related to the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation.  To address these concerns, the DPPA "establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent."

---

[1](...continued)
Julie L. Jones and Gerald M. Bailey (Doc. 41).  Neither Defendant has filed an answer, motion for summary judgment, or responded to the notice in any way.  Pursuant to Fed. R. Civ. P. 41(a)(1)(A) and (B), the Court will therefore enter judgment dismissing without prejudice all claims against these Defendants.

Maracich v. Spears, ___ U.S. ___, 133 S. Ct. 2191, 2198 (2013) (quoting Reno v. Condon, 528 U.S. 141, 143, 120 S. Ct. 666, 668 (2000)).

The DPPA prohibits any state department of motor vehicles, and any of its officers, employees, or contractors, from knowingly disclosing or otherwise making available to any person or entity "personal information" or "highly restricted personal information" "about any individual obtained by the department in connection with a motor vehicle record."  18 U.S.C. § 2721(a)(1), (2).  A "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle, title, motor vehicle registration, or identification card issued by a department of motor vehicles."  18 U.S.C. § 2725(1).  "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."  18 U.S.C. § 2725(3).  And "highly restricted personal information" is defined as "an individual's photograph or image, social security number, [and]  medical or disability information."  18 U.S.C. § 2725(4).

The DPPA permits a state department of motor vehicles to disclose an individual's "personal information" for use in connection with "matters of motor vehicle or driver safety and theft," motor vehicle emissions, alterations, recalls, advisories, performance monitoring by vehicle manufacturers, and removal of non-owner records

from the original owner records.   18 U.S.C. § 2721(b).   Otherwise, disclosure of

"personal information" and "highly restricted personal information" is permitted only

upon the express consent of the driver, and/or if one of 14 enumerated exceptions

apply.  § 2721(b)(1)-(14).[2]

In addition to the prohibitions against state departments of motor vehicles, the

DPPA provides that it is "unlawful for <u>any person</u> knowingly to obtain or disclose

personal information, from a motor vehicle record, for any use not permitted under

section 2721(b) of this title."  18 U.S.C. § 2722(a) (emphasis supplied).   It is also

unlawful for any person to make a false representation in order to obtain any personal

information from an individual's motor vehicle record.  § 2722(b).

Violations of the DPPA may subject a person to criminal fines and civil penalties.

18 U.S.C. § 2723.   In addition, the Act allows an individual whose personal information

is wrongfully disclosed and/or used to file a civil cause of action in a United States

district court against any person "who knowingly obtains, discloses or uses personal

information from a motor vehicle record, for a purpose not permitted under this

chapter."  18 U.S.C. § 2724(a).   The court may award actual damages, but not less

than liquidated damages of $2,500, punitive damages upon proof of willful or reckless

---

[2]The exceptions range from law enforcement purposes, to motor vehicle or driver safety purposes, to use in civil and/or criminal proceedings.  None of the enumerated exceptions are at issue at this stage of the case.

disregard of the law, attorney's fees and costs, and preliminary and equitable relief as the court deems appropriate.  § 2724(b).

## II.    The Alleged Violations of the DPPA[3]

Ms. Truesdell alleges in her Complaint that the Marion County Sheriff's Office uses a variety of databases and systems for criminal investigations and intelligence, one of which is the Driver and Vehicle Identification Database ("DAVID").  (Doc. 1, ¶ 17).   DAVID permits law enforcement personnel to search Florida driver licenses, identification cards, license plates, and other private and highly-restricted personal information. (Id., ¶ 18).  DAVID is maintained and updated by the Florida Department of Highway Safety and Motor Vehicles, and both the Department of Highway Safety and Motor Vehicles and the Florida Department of Law Enforcement are responsible for limiting access to DAVID for strictly protected law enforcement and investigative purposes. (Id., ¶¶ 19-21).

Defendant Clayton Thomas was employed by the Marion County Sheriff's Office for several years as a bailiff at the Marion County Courthouse.  His duties did not encompass any functions for which police investigation or DAVID-based inquiries would be necessary or appropriate.  However, no protections were put in place to prevent him from having unrestricted access to DAVID.  (Id., ¶ 22).

---

[3]In ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept as true all of the allegations of the complaint.

Over the course of at least three years, from 2010 through about July 2013, Mr. Thomas routinely accessed DAVID to view the confidential personal information of at least 42,000 persons.  The information Mr. Thomas viewed included, but was not limited to, each person's home address, color photograph or image, social security number, date of birth, state of birth, detailed vehicle registration information and description, prior and current home and mailing address, driving record, insurance carrier, emergency contacts, and those contact's personal information.  (Doc. 1, ¶ 23).

The Marion County Sheriff's Office at some point learned of Mr. Thomas' unlawful access of DAVID, and began an investigation into his conduct on or about July 2013.  (Doc. 1, ¶ 24).  The investigation revealed that on or about June 8, 2011, Mr. Thomas accessed Ms. Truesdell's personal information and highly restricted personal information, for his own personal, non-law enforcement use.  (Id., ¶ 25).

On August 2, 2013, Defendant Marion County Sheriff Chris Blair sent a letter to Ms. Truesdell explaining that her personal information, including her driver license information maintained on DAVID, was inappropriately accessed by a member of the Marion County Sheriff's office.  (Doc. 1, ¶ 26, Ex. A).  The letter does not identify Mr. Thomas by name, although Ms. Truesdell alleges that he is the culprit.  (Id., ¶ 27). The letter goes on to emphasize that this unidentified employee did not sell Ms. Truesdell's information, and did not use it for identity theft or other criminal purpose. Rather, the employee accessed the information "out of personal curiosity."  (Id., ¶ 26, Ex. A).  The letter further explained that the employee had been fired, and urged Ms.

Truesdell to call the Sheriff's Office if she had any questions.  (Id.).  Sheriff Blair sent a similar letter to at least several dozen other individuals.  (Id., ¶ 26).

Ms. Truesdell alleges that Mr. Thomas only accessed information on DAVID relating to female citizens, and that all of Sheriff Blair's letters were addressed to women.  (Doc. 1, ¶ 28).  Ms. Truesdell also alleges that other unnamed employees of the Marion County Sheriff's Office had unlawfully accessed DAVID for no proper purpose.  (Id., ¶ 29).

Ms. Truesdell asserts that at all material times the Marion County Sheriff's Office, along with the Departments of Safety and Motor Vehicles and Law Enforcement, had the ability to control access to DAVID, and to ensure that confidential personal information was not being accessed for an improper purpose.  (Doc. 1, ¶ 30).  She alleges that each of these entities consistently failed to prevent unauthorized access to DAVID and to her personal information.  Rather, Ms. Truesdell alleges that each entity knew that state employees were improperly accessing DAVID, but did not take any remedial actions or establish any safeguards to prevent the continuing access, thus enabling and ratifying the improper behavior.  (Id., ¶¶ 30-33).

Ms. Truesdell also alleges that the Marion County Sheriff's Office, Department of Safety and Motor Vehicles, and Department of Law Enforcement each knowingly implemented DAVID in such a way as to permit and encourage access by police officers and others that failed to protect privacy rights under state law and the DPPA. Specifically, she avers that the Sheriff's Office:  (a) failed to set rules for protecting the

privacy rights of Florida citizens; (b) permitted and on occasion actively promoted the accessing of DAVID from centrally-located computers that were accessible by various individuals without regard for law enforcement duties or job description; (c) permitted regular access to DAVID from user stations that did not require a password-protected log in; and (d) permitted regular access to DAVID under circumstances such that there was no way to identify the persons who used DAVID to gain access to personal information. (Doc. 1, ¶¶ 36-37).

At all material times the Marion County Sheriff's Office and the two state Departments had the duty to monitor the use of DAVID, to prevent improper access to DAVID, and to stop unauthorized uses when discovered. Ms. Truesdell alleges that the Sheriff's Office breached each of these duties, in every respect. (Doc. 1, ¶ 39). Ms. Truesdell avers that the Sheriff's Office agreed to conduct quarterly quality controls on user accounts, regularly monitor access of information, and conduct annual audits. For any discovered breach of privacy through improper access to DAVID, the Sheriff's Office had the duty to submit a report to the Department of Safety and Motor Vehicles summarizing the incident, detailing the records compromised, listing the disciplinary action undertaken, and identifying the preventative measures that would be put in place to prevent further breaches. (Id., ¶ 43).[4]

---

[4]The Complaint does not allege whether the Sheriff's Office conducted the monitoring and audits, or submitted the reports with respect to Mr. Thomas or any other discovered breach of privacy.

Lastly, Ms. Truesdell alleges that the Marion County Sheriff's Office, along with the Departments of Safety and Motor Vehicles and Law Enforcement, failed to properly train their personnel to prevent breaches of privacy through DAVID.  These state entities also have maintained, and continue to maintain, no protections or inadequate protections against improper use of DAVID, and have demonstrated lax policies or lax enforcement of policies that would otherwise prevent improper breaches or intrusions. (Doc. 1, ¶¶ 44-45).

## III.   Procedural History

Ms. Truesdell has filed a six-Count Complaint against the Defendants.  Count I asserts violations of the DPPA against all Defendants, including against Sheriff Blair in both his individual and official capacity.  Counts II-IV assert claims under 42 U.S.C. § 1983 against Mr. Thomas (Count II), against Sheriff Blair in his official capacity as Sheriff of Marion County (Count III), and against Sheriff Blair in his individual capacity (Count IV).  Count V is also against Sheriff Blair in his individual capacity, and asserts a common law theory of negligent supervision.  Lastly, Count VI is against Defendants Jones and Bailey in their official capacities, under § 1983.  (Doc. 1).  For each claim, Ms. Truesdell seeks to certify a class of "all persons who at any time had their personal information or highly restricted personal information accessed, viewed, disclosed, obtained, or used by Defendant Thomas."  (Id., ¶ 49).[5]  She requests actual damages,

_____

[5]Ms. Truesdell has moved to certify a class (Doc. 42), and the motion has not been ruled
(continued...)

liquidated damages, punitive damages, injunctive relief, and attorney's fees and costs, on behalf of herself and the members of the class.

On September 2, 2014, Ms. Truesdell voluntarily dismissed all claims against Defendants Jones and Bailey (Doc. 41).  There being no reason for delay, the Court will therefore direct the entry of judgment dismissing these Defendants without prejudice, and terminate as moot their joint motion to dismiss (Docs. 4-5).

### Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).  For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations.  Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010); Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

---

[5](...continued)
upon as of the date of this Order.

In order to avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and that rises "above the speculative level." Speaker, 623 F.3d at 1380 (citing Twombly, 550 U.S. at 570, 127 S. Ct. at 1964–65, 1974).  A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id.  (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).  The plausibility standard requires that a plaintiff allege sufficient facts to nudge his "claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.  Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions."  Id., 555 U.S. at 555, 127 S. Ct. at 1964-65.

## Discussion

### I.    The DPPA Does Not Violate the Commerce Clause

The remaining Defendants first argue that the application of the DPPA to the specific facts of this case is an unconstitutional exercise of Congress' Commerce Powers under Article I, § 8 – the "Commerce Clause."  Their argument is that in this particular case, Mr. Thomas accessed driver's personal information for a non-commercial purpose, and never sold or otherwise placed any of the information into interstate commerce.  Under such circumstances, the Defendants contend that

Congress lacks the authority to regulate Mr. Thomas' conduct (and in turn Sheriff Blair's conduct in his role as head of the Marion County Sheriff's Office and Mr. Thomas' supervisor) because it did not include an economic event.   The Court disagrees.

Article I, Section 8 of the United States Constitution provides that "[t]he Congress shall have the power to . . . regulate commerce . . . among the several states . . . .  And to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers . . . ."  Congress' Commerce powers are vast and must be given great deference.  The Supreme Court has consistently held that it "must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding." Hodel v.  Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 276 (1981).  These powers, however, are not without limits; they must have some nexus to interstate commerce.  As the Supreme Court stated in United States v.  Lopez, 514 U.S. 549, 115 S. Ct. 1624  (1995), the scope of Congress' Commerce powers has evolved over time to cover three categories of activity: (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce; and (3) intrastate activities that substantially affect interstate commerce.  Lopez, 514 U.S. at 560.  See also United States v. Morrison, 529 U.S. 598, 609, 120 S. Ct. 1740, 1749 (2000).  Recently, the Supreme Court noted that "[t]he power over activities that substantially affect interstate commerce can be expansive.  That power has been held to authorize federal regulation of such seemingly local matters as a farmer's decision

to grow wheat for himself and his livestock, and a loan shark's extortionate collections from a neighborhood butcher shop." National Federation of Independent Business v. Sebelius, ___ U.S. ___, 132 S. Ct. 2566, 2578-79 (2012).

A unanimous Supreme Court directly addressed the constitutionality of the DPPA in 2000. In Reno v. Condon, 528 U.S. 141, 120 S. Ct. 666 (2000), the Supreme Court held that the DPPA is a proper exercise of Congress' authority to regulate interstate commerce under the Commerce Clause because drivers' personal identifying information is a "thing in interstate commerce," and "its sale or release into the interstate stream of business is sufficient to support congressional regulation." 528 U.S. at 148, 120 S. Ct. at 671.

Reno involved the state of South Carolina's laws which permitted its motor vehicles departments to sell motor vehicle information. 528 U.S. at 147, 120 S. Ct. at 670. The Defendants thus argue that the application of Reno is limited to situations in which a state department of motor vehicles or an individual sells or attempts to sell driver's personal information. And since Ms. Truesdell's Complaint merely alleges that Mr. Thomas accessed the information on DAVID for his own personal use, and did not sell, transfer, or use the information for any economic purpose, the Defendants contend that the DPPA and Reno are inapplicable. In other words, the Defendants argue that the definition of a "thing in interstate commerce" is limited to items that are actually sold into the interstate stream of business. (Doc. 13, p. 5; Doc. 18, p. 6). This argument is unpersuasive for several reasons.

The Supreme Court, while citing to Reno, recently reiterated that the DPPA was enacted in part to address a non-commercial concern: "a growing threat from stalkers and criminals who could acquire personal information from state DMVs." Maracich, 133 S. Ct. at 2198 (citing Reno, 528 U.S. at 144).  See also Senne v. Village of Palatine, Illinois, 695 F.3d 597, 607 (7th Cir. 2012) ("[I]t is clear that safety and security concerns associated with excessive disclosures of personal information held by the State in motor vehicle records were the primary issue to be remedied by the legislation. . . .  The bill, it seems was viewed predominantly as a public safety measure.").

The Court therefore disagrees that Reno and its progeny stand for the proposition that only the portion of the DPPA which addresses the sale or attempted sale of driver's personal information is constitutional.  It also is worth noting that Reno did not single out any language in the DPPA addressing the sale or purchase of drivers' information – rather, Reno held the Act to be constitutional as a whole.

To say that driver's personal information ceases to be a "thing in interstate commerce" simply because Mr. Thomas accessed the information without paying for it and/or without selling it, also runs contrary to other Supreme Court precedent.  For example, in Gonzales v. Raich, 545 U.S. 1, 125 S. Ct. 2195 (2005), the Supreme Court held that the Controlled Substance Act, a comprehensive regulatory statute which criminalized, among other things, the local cultivation and use of marijuana for purely personal medical reasons, was a constitutional exercise of Congress' commerce powers.  In so holding, the court stated that Congress had a rational basis for

concluding that personal cultivation and use of marijuana would have a substantial effect on interstate commerce, such that it should be within federal control.  545 U.S. at 22-23, 125 S. Ct. at 2208-09.  Of particular note is the following discussion:

> Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce.  See, e.g., Perez, 402 U.S., at 151, 91 S. Ct. 1357; Wickard v. Filburn, 317 U.S. 111, 128-129, 63 S. Ct. 82, 87 L.Ed. 122 (1942).  As we stated in Wickard, "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce."  Id., at 125, 63 S. Ct. 82.  We have never required Congress to legislate with scientific exactitude. When Congress decides that the " 'total incidence' " of a practice poses a threat to a national market, it may regulate the entire class.  See Perez, 402 U.S., at 154-155, 91 S. Ct. 1357 ( " '[W]hen it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented it may do so.' " (quoting Westfall v. United States, 274 U.S. 256, 259, 47 S. Ct. 629, 71 L.Ed. 1036 (1927))).  In this vein, we have reiterated that when " 'a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.' "  E.g., Lopez, 514 U.S., at 558, 115 S. Ct. 1624 (quoting Maryland v. Wirtz, 392 U.S. 183, 196, n. 27, 88 S. Ct. 2017, 20 L.Ed. 2d 1020 (1968); emphasis deleted).

545 U.S. at 17, 125 S. Ct. at 2205-06.

Applying both Gonzales and Reno to the present case, the Court concludes that Congress did not overstep its constitutional authority by regulating both the commercial and non-commercial use and dissemination of drivers' personal information.  Prior to enactment of the DPPA, States had a long history of selling drivers' personal information to insurers, direct  marketers, and manufacturers.  Reno, 528 U.S. at 148, 120 S. Ct. at 671.  Moreover, drivers' personal information was "also used in the stream

of interstate commerce by various public and private entities for matters relating to interstate motoring." Id.   It is thus clear that the obtaining, disclosure, and use of drivers' personal information, much like the sale of marijuana, greatly impacted interstate commerce.  And as the Gonzales court held, "we have often reiterated that '[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class.'" 545 U.S. at 23, 125 S. Ct. at 2209 (quoting Perez v. United States, 402 U.S. 146, 154, 91 S. Ct. 1357, 1361 (1971)).  Thus, the fact that in this case Mr. Thomas did not sell or attempt to sell Ms. Truesdell's personal information does not exempt him from the DPPA.

The two decisions the Defendants most heavily rely upon are readily distinguishable and unpersuasive.  United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995) involved a challenge to the validity of the Gun-Free School Zones Act of 1990, "which was a brief, single-subject statute making it a crime for an individual to possess a gun in a school zone."  Gonzales, 545 U.S. at 23, 125 S. Ct. at 2209.  The Act did not regulate any economic activity, and did not provide that possession of a gun have any connection to past or future interstate commercial activity.  Under those facts, the Supreme Court held that the Act was outside Congress' commerce powers.  Lopez, 514 U.S. at 561, 115 S. Ct. at 1631-32.  United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740 (2000), addressed the Violence Against Women Act, which created a federal civil remedy for the victims of gender-motivated crimes of violence.  The

Supreme Court found this Act to be unconstitutional because it did not regulate any economic activity.  529 U.S. at 613, 120 S. Ct. at 1752.

In contrast, the DPPA regulates activities that are clearly economic in nature – the historical sale and distribution of drivers' personal information.  The DPPA is not a "brief, single-subject statute" that only applies to non-economic activities.  Rather, it regulates both commercial and non-commercial uses of drivers' personal information, for which there historically has existed an established interstate market.  And under the dictates of Gonzales, this Court does not have the authority to carve out from regulation "trivial, individual instances" where persons obtain and/or disclose drivers' personal information simply because there is no sales transaction.

The Court's conclusion has further support.  Numerous other courts, including several district courts within the Eleventh Circuit, have held that the DPPA is a valid exercise of Congress' commerce powers where the Act is applied to an individual's personal, non-commercial access and/or disclosure of a driver's personal information. See Senne v. Village of Palatine, Illinois, 695 F.3d 597 (7th Cir. 2012) (en banc) ("Senne I") (denying motion to dismiss, and finding that police officer's placement of a parking citation on a motorist's windshield that revealed personal information constituted a disclosure that could violate the DPPA); Senne v. Village of Palatine, Illinois, 695 F.3d 617 (7th Cir. 2012) ("Senne II") (following Reno and rejecting arguments that the regulation of the use of drivers' personal information on parking citations exceeds Congress' authority under the Commerce Clause); Ela v. Orange

-17-

County Sheriff's Office, 2014 WL 325697 (M.D. Fla. Jan. 19, 2014) (holding that application of the DPPA to a deputy sheriff's access, copying, and disclosure of a driver's personal information from the DAVID database for purely personal reasons is not a violation of the Commerce Clause); Buckner v. Rutherford, 2013 WL 5587935 (M.D. Fla. Oct. 10, 2013) (holding that merely obtaining drivers' information, even if for non-commercial purposes, is regulated by the DPPA, and the Act, as applied, is within Congress' authority under the Commerce Clause); Zittel v. City of Gainesville, 2013 WL 4811241 at * 1 (N.D. Fla. Sept. 9, 2013) ("Inasmuch as the Supreme Court has already determined that the DPPA passes constitutional muster, this Court declines Defendant City of Gainesville's invitation to excise instances where drivers' information is misappropriated for individual use as opposed to instances in which such information is sold or released.").

For these reasons, the Court concludes that the application of the DPPA to the facts of this case as alleged in Ms. Truesdell's Complaint fall within Congress' commerce powers.  The Act is not unconstitutional as applied, and the Defendants' motion to dismiss shall be denied as to this argument.

## II.    The DPPA Does Not Violate the Tenth Amendment

Sheriff Blair and Mr. Thomas also argue that the DPPA, as applied to the facts of this case, violates the principles of federalism contained in the Tenth Amendment and enunciated in New York v. United States, 505 U.S. 144, 112 S. Ct. 2408 (1992)

and Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365 (1997).[6]  These Defendants argue that by applying the DPPA to this case, Congress is undermining Florida's state sovereignty by infringing upon its police powers, and in particular, Florida's regulation of public safety and motor vehicle safety, and ability to regulate its internal administration and management of state motor vehicle records.

This argument was squarely foreclosed by the Supreme Court in Reno.  See 528 U.S. at 143, 120 S. Ct. at 668 ("We hold that in enacting this statute Congress did not run afoul of the federalism principles enunciated in New York v. United States, 505 U.S. 144, 112 S. Ct. 2408, 120 L.Ed.2d 120 (1992) and Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365, 138 L.Ed.2d 814 (1997).").  The Reno court determined that

> the DPPA does not require the States in their sovereign capacity to regulate their own citizens.  The DPPA regulates the States as the owners of data bases.  It does not require the South Carolina Legislature to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals.  We accordingly conclude that the DPPA is consistent with the constitutional principles enunciated in New York and Printz.

528 U.S. at 151, 120 S. Ct. at 672.  See also Travis v. Reno, 163 F.3d 1000, 1005 (7th Cir. 1998) ("Because the Driver's Privacy Protection Act affects states as owners of

---

[6]In New York, the Supreme Court held unconstitutional provisions of the Low-Level Radioactive Waste Policy Act, which required state legislatures to enact laws to accept ownership of waste generated within their borders and to regulate the disposal of such waste according to instructions of Congress.  505 U.S. at 162, 112 S. Ct. at 2421.  In Printz, the Supreme Court invalidated a provision of the Brady Act which commanded "state and local enforcement officers to conduct background checks on prospective handgun purchasers."  521 U.S. at 902, 117 S. Ct. at 2368.

data, rather than as sovereigns, it does not commandeer states in violation of the Constitution.  Wisconsin is no more a regulator or law enforcer when it decides what information to release from its database than is the corner Blockbuster Video outlet."); Rios v. Direct Mail Express, Inc., 435 F. Supp. 2d 1199, 1205 (S.D. Fla. 2006) (holding that under Reno, the DPPA does not violate the Tenth or Eleventh Amendments "because it did not require states in their sovereign capacity to regulate their own citizens, but instead, regulated the states as the owners of databases."); Zittel, 2013 WL 4811241 at * 1 ("The DPPA does not violate the Tenth Amendment because it does not mandate the states in their sovereign capacity to regulate their own citizens, to enact laws or regulations, or to enforce a federal regulation.  Instead, the DPPA regulates states as 'owners of data bases.'") (citations omitted).

The Defendants' motions to dismiss will therefore be denied as to this argument. See also English v. Parker, 2011 WL 1842890 (M.D. Fla. May 16, 2011) (granting summary judgment in favor of the plaintiff as to liability under the DPPA where the defendant, a law enforcement officer, accessed the plaintiff's personal information through DAVID for purely personal use).

## III.    The Official Capacity Claim Against Sheriff Blair Is Properly Pleaded

The Eleventh Circuit Court of Appeals has held that the DPPA creates a statutory right to privacy that is also enforceable under the civil rights statute, 42 U.S.C. § 1983. Collier v. Dickinson, 477 F.3d 1306, 1310-11 (11th Cir. 2007).  Liability under § 1983

can be alleged against a state actor in his individual capacity, or in his official capacity as the head of a state agency (also known as municipal liability).  In Counts III and IV of her Complaint, Ms. Truesdell alleges that Sheriff Blair, in both his individual and official capacities, violated her privacy rights created under the DPPA.  Sheriff Blair argues that Ms. Truesdell has not sufficiently alleged a claim for relief against him in his official capacity under § 1983.[7]

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Ms. Truesdell must allege in her § 1983 official capacity claim either that some custom, policy, or practice caused the violation of her DPPA privacy rights, or a failure to train and/or supervise employees caused the violation of her rights.  See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  Contrary to Sheriff Blair's arguments, the Court finds that Ms. Truesdell's Complaint alleges more than enough factual detail of both purported customs, policies, and practices by the Marion County Sheriff's Office concerning the regulation (or lack thereof) of access to the DAVID database, as well as a known and obvious failure to train employees on how and when to access DAVID.  See, e.g., Doc. 1, ¶¶ 22-23, 30-32, 36-39, 44-45.  The Complaint also alleges that these customs, policies, and

---

[7]Sheriff Blair has not challenged the sufficiency of the allegations as it pertains to his potential liability in either an individual or official capacity under the DPPA, nor has he challenged Ms. Truesdell's individual capacity claims against him under § 1983 or common law negligent supervision.  Because such arguments fall under Fed. R. Civ. P. 12(b)(6), the Court is without authority to address them *sua sponte.*

practices, and/or failure to train caused the alleged violation of Ms. Truesdell's privacy rights.  Id., at ¶¶ 33, 35, 89-97.

Sheriff Blair's motion to dismiss for failure to state a claim shall be denied.

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)     Pursuant to Plaintiff Kellean K. Truesdell's Notice of Voluntary Dismissal (Doc. 41) and Fed. R. Civ. P. 41 (a)(1)(A)(I), and finding no just reason for delay, see Fed. R. Civ. P. 54(b), the Clerk is directed to enter judgment dismissing WITHOUT PREJUDICE all claims against Defendants Julie L. Jones and Gerald M. Bailey.  The Clerk is further directed to TERMINATE AS MOOT the motions to dismiss filed by these Defendants (Docs. 4-5).

(2)     Defendant Marion County Sheriff Chris Blair's Motion to Dismiss Complaint (Counts I, III, IV, V) (Doc. 13) and Motion for Oral Argument (Doc. 14) are both DENIED.

(3)     Defendant Clayton Thomas' Motion to Dismiss Class Action Complaint, Counts I and II (Doc. 18) and Motion for Oral Argument (Doc. 19) are both DENIED.

(4)     Pursuant to 28 U.S.C. § 2403(a), the Court must certify to the Attorney General any action challenging the constitutionality of an act of Congress.  The constitutionality of the Drivers' Privacy Protection Act has been called into question by the motions to dismiss of Defendants Thomas and Sheriff Blair.  Thus, the Court

Case 5:13-cv-00552-WTH-PRL   Document 68   Filed 01/30/15   Page 23 of 23 PageID 706

hereby certifies to the Attorney General of the United States that the validity of provisions under 18 U.S.C. § 2721, *et seq.*, have been called into question in this case. The Clerk of the Court is directed to forthwith send a copy of this Order, a copy of the Complaint (Doc. 1), and a copy of the Defendants' motions to dismiss (Docs. 13, 18) by certified mail, to the Attorney General at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington D.C. 20530-0001, and to provide an additional copy of these documents to the United Sates Attorney for this District.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 30th day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy

-23-